## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH SHOEMAKER, RICHARD GINDIN, DEMYA JOHNSON, KIMBERLY STARLING,** and **MATTHEW MCCORMICK**, individually and on behalf of all others similarly situated, *Plaintiffs*, v. **RICHARD ZEITLIN, AMERICAN TECHNOLOGY SERVICES, LLC, UNIFIED DATA SERVICES, LLC, COMPLIANCE CONSULTANTS, LLC,** and **JOHN DOES 1-10**, corporate entities and individuals presently unknown, *Defendants*. | Civil Case No.: 1:21-cv-01668-CCC **Judge Conner** **FIRST AMENDED COMPLAINT CLASS ACTION** **JURY TRIAL DEMANDED** |

## BACKGROUND

**Introduction**

1.    This is a case about a profit-making enterprise that uses sham political action committees and their complicit treasurers to raise millions of dollars in political contributions by rampantly violating the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, for the sole purpose of siphoning those donations out in the form of enormous profits.

2.    This is not a case about speech, the First Amendment, or political ideology; rather, it is about whether political action committees can misuse telemarking activities and violate the TCPA for the purpose of facilitating a massive money-making scheme.

3.    Defendant, Richard Zeitlin ("Zeitlin") and his network of companies, Defendants American Technology Services, LLC, Unified Data Services, LLC, and Compliance Consultants,

LLC[1] rake in millions of dollars in "donations" by placing prerecorded voice calls to individuals cellular telephones without their prior express consent in violation of the TCPA.

4.      The Zeitlin Companies make these calls on behalf of groups masquerading as legitimate political action committees, which purport to raise money for political candidates or important causes such as supporting veterans, law enforcement, firefighters, or victims of deadly disease, but are in fact "Scam PACs".

5.      Instead of putting the millions of dollars raised by the Zeitlin Companies to work for these noble causes, the Scam PACs and their complicit treasurers (who also profit from this massive scheme) funnel nearly all of the funds back to the Zeitlin Companies through an array of bogus and inflated overhead expenditures.

6.      Ultimately, these Scam PACs spend relatively little on actual political activity or the causes they supposedly champion and merely function as Mr. Zeitlin's personal cash cows.

7.      The actions of the Zeitlin Companies and companies like them are the reason the TCPA exists and remains a vital consumer protection tool.

8.      Accordingly, Plaintiffs bring this TCPA action individually and on behalf of a class of similarly situated individuals under 47 U.S.C. § 227(b).

**The Telephone Consumer Protection Act**

9.      The TCPA was enacted in 1991 to prevent unwanted telephone calls and solicitation, provide power to individuals to prevent unwanted solicitations, and rein in unrestricted telemarketing.  *See* 47 U.S.C. § 227, *et seq.*

10.      The TCPA provides private rights of action for various types of telemarketing-

---

[1] Zeitlin and the remaining Defendants will be collectively referred to as "the Zeitlin Companies."  Upon information and belief, Mr. Zeitlins owns, operates and/or controls additional companies that benefit from the scheme.  The identities of these companies will be revealed during the discovery process.

related misconduct.

11.     Relevant here, Section 227(b) of the TCPA prohibits making **any** call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

12.     Political calls to cell phones are not exempt from the ambit of the TCPA.  *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013) ("The [TCPA]'s plain language demonstrates that it applies to all prerecorded phone calls, including those with a political message."); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2343-44 (2020) (declining to invalidate the TCPA's prohibition on robocalls in its entirety and stating that "plaintiffs still may not make political robocalls to cell phones").

13.     A violation of section 227(b) carries statutory damages of $500 to $1,500 per call.

14.     The TCPA also provides for permanent injunctive relief to enjoin defendants from violating the TCPA.  *See* 47 U.S.C. § 227(b)(3).

**Soundboard Technology**

15.     The TCPA's prohibition on the use of artificial or prerecorded voices without the prior express consent of the called party includes the use of "soundboard technology."  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; 35* FCC 14640, 14640-41 (F.C.C., Dec. 18, 2020).

16.     Soundboard technology, also known as "avatar technology," is the use of a library of multiple short, prerecorded messages or sound clips to communicate with a called party during a call.

17.     A live person or artificial intelligence selects which prerecorded messages or sound

clips to play in response to a called party's responses or inquiries.

18.     The FCC has explained that soundboard technology violates the prohibition on

using artificial or prerecorded voice messages, even if a live agent is in control of the response:

> **There is no doubt that soundboard technology "uses" a prerecorded voice to deliver a message to the consumer** . . . . As a result, if a live agent initiates the call with a prerecorded voice message using soundboard technology, the caller must obtain the called party's prior express consent.  In other words, the mere presence of a live operator with soundboard technology does not negate the clear statutory prohibition against initiating a call using a prerecorded or artificial voice.  N**owhere does the TCPA text exempt calls where a human selects a prerecorded voice message for the called party**.

*Id.* at 14644 (emphasis added).

19.     The use of soundboard technology has drawn many consumer complaints.  *See id.*

at 14642-43.

20.     For example, consumers complain that during soundboard calls, the consumers

often receive inappropriate or nonsensical responses to their questions or comments, no live

telemarketer intervenes to provide a human response when requested to do so, the recorded audio

clips that are played do not adequately address their questions and calls abruptly terminate in

response to consumer questions or inquiries for which there is not an appropriate recorded response

available.[2]

21.     The Zeitlin Companies are well aware that the use of soundboard technology is

illegal but choose to violate the TCPA anyway.[3]

---

[2] Letter from Lois Greisman, FTC to Michael Bills (Nov. 10, 2016) https://www.ftc.gov/system/files/documents/advisory_opinions/letter-lois-greisman-associate-director-division-marketing-practices-michael-bills/161110staffopsoundboarding.pdf (last accessed August 28, 2021)

[3] *See* Richard Zeitlin, Richard Zeitlin Truth, https://www.richardzeitlintruth.com/the-issues/ (last visited August 23, 2021) (Mr. Zeitlin defends his practices and acknowledges, but objects to the illegal nature of his activities on his own public relations website).

22.     In fact, on April 24, 2019, the Zeitlin Companies sued the FTC to challenge the FTC's position that the use of soundboard technology violates the Telemarketing Sales Rule, 16 C.F.R. § 310 *et seq.* ("TSR").  *See Zeitlin et al. v. FTC*, Civ. No. 2:19-cv-00698, Dkt. 1 (D. Nev. Apr. 24, 2019).

23.     In their Complaint, the Zeitlin Companies admit that they use prohibited soundboard technology: "[Richard Zeitlin, Unified Data Services, LLC, Compliance Consultants, LLC, and American Technology Services, LLC], together with many others, have invested millions of dollars and spent countless hours in training and development to implement Soundboard technology and its concomitant business model." *Id.* at 4.

24.     The FTC filed a motion to dismiss challenging, *inter alia*, the Zeitlin Companies Article III standing, stating "[t]he complaint is silent about what is businesses do or whether they use soundboard technology."  *See Zeitlin et al. v. FTC*, Civ. No. 2:19-cv-00698, Dkt. 19 at 2 (D. Nev. June 28, 2019).

25.     In response, the Zeitlin Companies confirmed that they do, indeed, utilize soundboard technology:

> The Commission's first challenge plainly fails.  By any fair reading, the Complaint as a whole clearly states a sufficiently particularized injury to warrant a finding of standing.  For example, paragraph 42 alleges that the Division Letter subjects "Plaintiffs and other soundboard users to serious civil penalties" of "approximately $40,000 per call" which could "quickly snowball into more than $1 million dollars a month for each single contract."  **The phrase "other soundboard users" necessarily implies that Plaintiffs are Soundboard users who are subject to penalties of approximately $40,000 per call.**

*Zeitlin et al. v. FTC*, Civ. No. 2:19-cv-00698, Dkt. 23 at 7 (D. Nev. June 28, 2019) (emphasis added).

26.     On April 10, 2020, the United States District Court for the District of Nevada granted the FTC's Motion to Dismiss. *Zeitlin et al. v. FTC*, Civ. No. 2:19-cv-00698, Dkt. 40 (D. Nev. April 10, 2020).

27.     On June 8, 2020, the Zeitlin Companies appealed the decision to the United States Court of Appeals for the Ninth Circuit. *See Zeitlin et al. v. FTC*, Appeal No. 20-16128 (9th Cir.)

28.     In their opening brief, the Zeitlin Companies, again, admit to the use of Soundboard technology:

- "Since 2009, Zeitlin and his Companies relied on this interpretation utilizing Soundboard technology or its equivalent in their business practices. Zeitlin and his companies have invested millions of dollars in equipment and employee training since 2009 to implement their business plan" *Zeitlin et al. v. FTC*, Appeal No. 20-16128, Dkt. 11 at 10 (9th Cir. Feb. 5, 2021).

- "The second paragraph of [the Zeitlin Companies'] complaint unambiguously states they are telemarketers that are bound and affected by the FTC's 2016 Division Letter." *Id.* at 21.

- "Contrary to the FTC's original standing argument, references to [the Zeitlin Companies] engagement in telemarketing, use of Soundboard technology, and solicitation of charitable subscriptions are legion." *Id.* at 22.

- "Given these explicit allegations it is beyond serious dispute that [the Zeitlin Companies] alleged concrete facts supporting the inference that [the Zeitlin Companies] engage in telemarketing, use soundboard, and solicit charitable donations." *Id.* at 23 (internal quotations and alterations omitted).

**The Scheme**

29.     The Zeitlin Companies partner with the following Scam PACs and their treasurers to illegally solicit donations in their massive profit-making enterprise:

| **Scam PAC**[4] | **Treasurer** |
|---|---|
| American Veterans Initiative d/b/a | Richard League |

---

[4] This list of Scam PACs is not intended to be exclusive.

| | |
|---|---|
| National Alliance for American Veterans | |
| American Veterans Support Group PAC | Paul DeRidder |
| Americans for Police and Trooper Safety | Paul Kutak |
| Americans for the Cure of Breast Cancer | Robert Piaro |
| Association for Emergency Responders and Firefighters | Robert Piaro |
| Autism Hear Us Now LLC<br>Autism Hear Us Now PAC Inc | Oliver Cappleman |
| Childrens Leukemia Support Network, LLC; | Kecia M. Pollock |
| Constitutional Leadership PAC; | Robert Price |
| Cops and Kids Together | Paul Kutak |
| Firefighters Alliance of America LLC; | Kecia M. Pollock |
| Heart Disease Network of America; | Keicia M. Pollock |
| Honoring American Law Enforcement PAC (AKA HALE PAC) | Bob Stitt |
| Law Enforcement for a Safer American PAC | Jeremy Kevitt |
| National Assistance Committee | Kerry Sharon |
| Police and Trooper Support; | Matt Cobos |
| Police Coalition of America d/b/a Police Assistance Foundation | Richard League |
| Police Officers Defense Alliance LLC; | Kecia M. Pollock |
| Standing by Veterans PAC Inc. | Robert Piaro |
| Support our Firefighters and Paramedics PAC, Inc. | Oliver Cappleman |
| The Disabled Veterans Coalition | Matt Cobos |
| United American Veterans PAC | Bryan Monville |
| United Veterans Alliance of America LLC<br>United Veterans Alliance of America PAC Inc | Oliver Cappleman |
| US Veterans Assistance Foundation | Robert Piaro |
| Veterans AID PAC Inc | Oliver Cappelman |

30.     The Zeitlin Companies admit to utilizing Scam PACs in their money-making scheme because political action committees are not subject to the laws governing charity fundraising and their activities slip through the gaps among agencies that govern elections, charities and telemarketing.[5]

31.     Mr. Zeitlin boasts that "there are no federal or state laws that can dictate how much professional fundraisers charge for their work," implying that his despicable behavior of pocketing

---

[5] *See* Jarrett Renshaw, Joseph Tanfani, *'Scam Pac' fundraisers reap millions in the name of heart-tugging causes*, Reuters, Jan. 29, 2020, https://www.reuters.com/investigates/special-report/usa-fundraisers-scampacs/#sidebar-scampacs (last visited August 23, 2021); Maggie Severns and Scott Bland, *'Scam PACs' rake in millions under guise of charity*, Politico, https://www.politico.com/story/2018/05/04/scam-pacs-political-action-committees-charity-investigation-568491 (last visited August 23, 2021).

nearly all the donations he solicits on behalf of Scam PACs and scam nonprofits is lawful and acceptable.[6]

32.     Since most effective organizations spend no more than 25 percent of their expenses on fundraising and overhead,[7] the Zeitlin Companies' scheme requires complicit treasurers that either turn a blind eye to their fiduciary duties and authorize the inflated expenditures or were actively engaged in the deceit.

33.     It is no surprise that many of the Scam PACs that the Zeitlin Companies use in their scheme are often run by individuals with troubled pasts and/or are longtime business associates and childhood friends of Mr. Zeitlin.[8]

34.     Many of these treasurers run multiple Scam PACs and each profit from their role in the Zeitlin Companies' scheme.

35.     For example, Oliver Cappleman, who is the Treasurer of at least four Scam PACs that partner with the Zeitlin Companies met Mr. Zeitlin when the two were teenagers working for a telemarketing company in Milwaukee, Wisconsin.[9]

36.     Mr. Cappleman, who owned his own telemarketing company, has also contracted with Mr. Zeitlin in the past and has adopted Mr. Zeitlin's public relations strategy of creating his own support website, where he refers to Scam PACs as "FAKE NEWS."[10]

37.     According to Federal Election Commission ("FEC") Records, Mr. Cappleman has made at least $215,885.35 from his role in the Zeitlin Companies' scheme.

---

[6] Richard Zeitlin, Richard Zeitlin Truth, https://www.richardzeitlintruth.com/the-issues/ (last visited August 23, 2021)

[7] *See* Sarah Kleiner, Chris Zubak-Skees*, You Donated to Kids With Cancer. This Vegas Telemarketer Cashed In.*, The Center For Public Integrity, Sept. 12, 2019, https://publicintegrity.org/politics/charitable-contributions/ (last visited August 23, 2021).

[8] *See id.*

[9] *See id.*

[10] Oliver Cappleman, Ollie Cappleman – Patriot/Entrepreneur, https://www.olliecappleman.com/ (last visited August 23, 2021).

38.     William C. Pollock and Kecia M. Pollock together run at least four Scam PACs that partner with the Zeitlin Companies.[11]

39.     According to FEC records, the Pollocks have made at least $370,140.61 from their role in the Zeitlin Companies' scheme.

40.     Mrs. Pollock serves as the treasurer of her and her husband's Scam PACs, while Mr. Pollock serves as the face of these organizations and exploits his position as a police officer in the scheme.[12]

41.     Like Mr. Zeitlin and Mr. Cappleman, Mr. Pollock adopts the public relations strategy of creating his own support website, which is nearly a carbon copy of Mr. Cappleman's site.

42.     The Zeitlin Companies place millions of calls on behalf of these Scam PACs seeking donations for the sole purpose of having those funds funneled back to the Zeitlin Companies by the Scam PACs' complicit treasurers.

43.     Each of these calls utilize soundboard technology and violate the TCPA.

44.     The Zeitlin Companies take in donations on behalf of these Scam PACs via credit or debit card (over the phone) or via checks and money orders mailed to PO Boxes in response to a physical "pledge packet" that the Zeitlin Companies will send if a called party does not wish to make a donation over the phone.

45.     In their Federal Election Commission filings, the Scam PACs report the donations and their "overhead expenditures and disbursements."

46.     Almost all of the "overhead expenditures and disbursements" made by these Scam

---

[11] *See* Kleiner and Zubak-Skees, *supra* note 8.
[12] *See* Kleiner and Zubak-Skees, *supra* note 8; *see also* Sarah Kleiner, Chris Zubak-Skees, *Las Vegas Cop Still Patrolling Streets Amid Questions About His Political Committees*, https://publicintegrity.org/politics/las-vegas-police-pacs-william-pollock/ (last visited August 23, 2021).

PACs are paid to the Zeitlin Companies and their complicit treasurers.

47.     For example, from January 1, 2019 to December 31, 2020, the HALE PAC raised approximately $3,959,290.92.[13]

48.     From January 1, 2019 to December 31, 2020, the HALE PAC paid Compliance Consultants LLC d/b/a American PCI Services, American Technology Services, LLC d/b/a Unlimited Tech Support and Unified Data Services, LLC d/b/a Cloud Data Services a total of $2,969,139.82, which amounted to 93.4% of HALE PAC's operating expenditures ($3,178,406.23 total) for that period.[14]

49.     During that same period, the International Union of Police Associations ("IUPA")[15] and its Executive Vice President, Dennis Slocumb was paid $43,550.36.[16]

50.     Since its inception, executives of IUPA, including Bob Stitt, Hugh Cameron and Michael Crivello, have taken turns serving as the treasurer of the HALE PAC.

51.     Knowing that the filings of political action committees are public, Mr. Zeitlin conceals the identities of the Zeitlin Companies involved in this scheme.

52.     For example, Mr. Zeitlin uses unregistered fictious names for his companies to conceal their identities.

53.     Mr. Zeitlin uses UPS Store mailboxes throughout the country with mail forwarding services to make it appear that the Zeitlin Companies (which all operate from Las Vegas, Nevada)

---

[13] Federal Elections Commission, https://www.fec.gov/data/committee/C00710178/?cycle=2020 (last accessed August 23, 2021).

[14] Federal Elections Commission, https://www.fec.gov/data/committee/C00710178/?tab=summary&cycle=2020 (last accessed August 23, 2021).

[15] IUPA has also been the subject of scrutiny for partnering with the Zeitlin Companies for their own illegal campaigns. *See* Sarah Kleiner, Chris Zubak-Skees, *They Promise to Help Families of Fallen Officers. But they're Mostly Paying Telemarketers,* Dec. 27, 2019, https://publicintegrity.org/politics/iupa-leorf-police-union-charity-telemarketers/ (last visited August 23, 2021).

[16] Federal Elections Commission, https://www.fec.gov/data/committee/C00710178/?tab=summary&cycle=2020 (last accessed August 23, 2021).

operate from other locations throughout the United States.

54.     For example, Mr. Zeitlin conceals the identity of Compliance Consultants, LLC by utilizing the unregistered fictious name "American PCI Services" and a UPS Store mailbox address in Milwaukee, Wisconsin: 1345 N. Jefferson Street, #454, Milwaukee, Wisconsin 53202.

55.     Mr. Zeitlin conceals the identity of American Technology Services, LLC by utilizing the unregistered fictious name "Unlimited Tech Support" and a UPS Store mailbox address in Phoenix, Arizona: 125 North 2nd Street, Suite 110 Box 241, Phoenix, AZ 85004.

56.     Mr. Zeitlin conceals the identity of Unified Data Services, LLC by utilizing the unregistered fictious name "Cloud Data Services" and a UPS Store mailbox in Indianapolis, IN: 1350 W. Southport Road, Box 130, Indianapolis, IN 46217.

57.     Upon information and belief, Mr. Zeitlin personally established these UPS Store Mailbox addresses and utilizes mail forwarding services to route his fraudulent disbursements to an address in Las Vegas.

58.     In September 2019, the Center for Public Integrity, the Pulitzer Prize winning, non-partisan, non-profit investigative news organization, reported that since 2006, Mr. Zeitlin and his telemarketing companies raised $153.1 million dollars on behalf of Scam PACs and scam nonprofits, and pocketed nearly $133.1 million dollars or 87% of the funds raised.[17]

## JURISDICTION AND VENUE

59.     This Court has subject matter jurisdiction over the First Cause of Action below pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the … laws [,] … of the United States."), as that cause of action arises under a federal statute, *to wit*, the TCPA.  *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 132 S. Ct. 740, 181 L.Ed.2d 881 (2012) (unanimously holding that federal courts have subject

---

[17] *See* Kleiner and Chris Zubak-Skees, *supra* note 8.

matter jurisdiction for claims arising under the TCPA, specifically, 27 U.S.C. §227(b)(3) pursuant to 28 U.S.C. §1331).

60.     This Court has subject matter jurisdiction over the Second Cause of Action below pursuant to 28 U.S.C. §1367 (supplemental jurisdiction) as that cause of action is so related to the claim contained in the First Cause of Action for which this Court has original federal question jurisdiction so as to form part of the same case of controversy under Article III of the United State Constitution. *See* 28 U.S.C. §1367(a).

61.     This Court has specific personal jurisdiction over the Zeitlin Companies because the Zeitlin Companies make calls into this District, including to Plaintiff Shoemaker and Plaintiff Gindin who have Pennsylvania area codes.

62.     This Court also has specific personal jurisdiction over the Zeitlin Companies because the Zeitlin Companies transacted business and committed tortious acts within this District and Plaintiffs' claims arise from those activities.

63.     Venue is proper in this District because the Zeitlin Companies conduct significant amounts of business transactions within this District and because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in, was directed to, and/or emanated from this judicial district. *See* 28 U.S.C. § 1391.

## PARTIES

64.     Plaintiff Joseph Shoemaker ("Mr. Shoemaker") is a citizen and resident of Middletown, Pennsylvania.

65.     Plaintiff Shoemaker is a "person" as defined by 47 U.S.C. § 153(39).

66.     Plaintiff Richard Gindin ("Mr. Gindin") is a citizen and resident of Philadelphia, Pennsylvania.

67.     Plaintiff Gindin is a "person" as defined by 47 U.S.C. § 153(39).

68.     Plaintiff DeMya Johnson ("Ms. Johnson") is, and at all times mentioned herein was, a citizen of the United States.

69.     At all times mentioned herein, Plaintiff Johnson was a resident of Decatur, Alabama.

70.     Plaintiff Johnson is currently a temporary resident of Sweden.

71.     Plaintiff Johnson is a "person" as defined by 47 U.S.C. § 153(39).

72.     Plaintiff Kimberly Starling ("Ms. Starling") is a citizen and resident of Southlake, Texas.

73.     Plaintiff Starling is a "person" as defined by 47 U.S.C. § 153(39).

74.     Plaintiff Matthew McCormick ("Mr. McCormick") is a citizen and resident of Prosper, Texas.

75.     Mr. McCormick is a "person" as defined by 47 U.S.C. § 153(39).

76.     Defendant American Technology Services, LLC is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada.

77.     Upon information and belief, American Technology Services, LLC uses the unregistered fictitious name "Unlimited Tech Support."

78.     Defendant Compliance Consultant, LLC is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada.

79.     Upon information and belief, Compliance Consultant, LLC uses the unregistered fictitious name "American PCI Services."

80.     Defendant Unified Data Services, LLC is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada.

81.     Upon information and belief, Unified Data Services, LLC uses the unregistered fictitious name "Cloud Data Services."

82.     Defendant Richard Zeitlin is an individual who resides in Las Vegas, Nevada and owns and controls Defendants American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC.

83.     At all relevant and material times, Mr. Zeitlin owned, operated, controlled, and/or had the right and ability to supervise, direct, and control American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC.

84.     The Zeitlin Companies are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

85.     The Zeitlin Companies placed, or had placed on their behalf, automated, prerecorded and/or artificial voice calls in an effort to solicit donations to various Scam PACs and scam charities.

86.     As such, the Zeitlin Companies are directly liable for the violations of the TCPA alleged herein.

87.     Alternatively, the acts complained of herein were carried out by agents operating for the Zeitlin Companies' benefit, or with actual, implied or apparent authority of the Zeitlin Companies, such that the Zeitlin Companies are vicariously liable as to all Counts herein.

88.     Alternatively, the Zeitlin Companies ratified or accepted the benefits of the acts of their agents as described herein, and are therefore jointly and severally liable as to all Counts herein.

89.     Upon information and belief, Mr. Zeitlin owned, operated, and/or financially benefitted from the unlawful conduct alleged in this Complaint.

90.     Upon information and belief, Mr. Zeitlin had direct, personal participation in, and personally authorized, the conduct that violates the TCPA.

91.     Accordingly, Mr. Zeitlin is directly liable for the damages alleged in this Complaint.

92.     Alternatively, Mr. Zeitlin had the right and ability to supervise, direct, and control the unlawful conduct alleged in this Complaint, and derived a direct financial benefit from the unlawful conduct.

93.     As such, Mr. Zeitlin is subject to liability for the unlawful conduct alleged herein under principles of secondary liability, including, without limitation, *respondeat superior* and/or vicarious liability.

## PERSONAL PARTICIPATION LIABILITY

94.     Upon information and belief, Mr. Zeitlin had direct, personal participation in, and personally authorized, the conduct that violates the TCPA.

95.     Mr. Zeitlin was not merely tangentially involved.

96.     For example, Mr. Zeitlin participated in the creation of the scripts and recording of the prerecorded messages to be used during the Zeitlin Companies' autodialed, prerecorded "fundraising calls."

97.     Mr. Zeitlin participated in selecting and implementing technology to spoof the outgoing numbers that would appear on caller identification information during the Zeitlin Companies' autodialed, prerecorded fundraising calls.

98.     Accordingly, Mr. Zeitlin is directly liable for the damages alleged in this Complaint.

## JOINT ENTERPRISE AND /OR ALTER EGO

99.     Mr. Zeitlin is behind this vast web of inextricably intertwined corporate entities (the Zeitlin Companies) and scheme to place autodialed, prerecorded fundraising calls in violation of the TCPA.

100.     Mr. Zeitlin owns, operates, controls, and/or has the right and ability to supervise, direct and control American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC.

101.     American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC are shams created by Mr. Zeitlin operating in a joint venture to carry out a single business enterprise.

102.     Mr. Zeitlin, American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC operate as alter egos of one another in a single economic enterprise.

103.     In all aspects of their businesses, the Zeitlin Companies function as a single entity and should be treated as such.

104.     Piercing the corporate veils of American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC to impose personal liability on Mr. Zeitlin (their only officer, manager and member) is appropriate because (1) there is such unity of interest and ownership that the separate personalities of entities and individuals does not exist; and (2) fraud, injustice or other inequitable results will occur if the veil is not pierced.

105.     Here, the corporate fictions created by Mr. Zeitlin must be disregarded and the barrier to personal liability removed because Mr. Zeitlin uses the web of American Technology Services, LLC, Compliance Consultant, LLC, and Unified Data Services, LLC to perpetrate injustice in furtherance of a common purpose.

106.     Further investigation and discovery are expected to confirm that (1) Mr. Zeitlin fails to adequately capitalize the corporate Defendants for the reasonable risks of corporate undertaking; (2) the corporate Defendants disregard corporate or entity formalities; (3) the corporate Defendants are insolvent; (4) the corporate Defendants lack separately held assets; (5) the corporate Defendants use the same office or business site; (6) the corporate Defendants share employees or agents; (7) the corporate Defendants misrepresent or conceal the identity of the ownership, management or financial interests of the entities; (8) the corporate Defendants use the entity forum as a subterfuge for illegal transactions; (9) Mr. Zeitlin siphons the funds from the corporate Defendants; (10) the corporate Defendants lack corporate records; (11) the corporate Defendants are merely facades; (12) the corporate Defendants commingle funds and assets; (13) Mr. Zeitlin possesses an identical ownership stake in the corporate Defendants; and (14) Mr. Zeitlin is a common director and officer of the corporate Defendants.

## GENERAL FACTUAL ALLEGATIONS

107.     The Zeitlin Companies make unsolicited prerecorded and/or soundboard technology driven calls to hundreds of thousands of Americans on behalf of countless Scam PACs in a scheme to unjustly enrich themselves, and Mr. Zeitlin in particular.

108.     For the calls made using an artificial or prerecorded voice (all calls), the Zeitlin Companies utilize soundboard technology to play an artificial voice and/or prerecorded voice messages to the called party to aggressively soliciting donations.

109.     The Federal Communication Commission ("FCC") has declared that the use of soundboard technology violates the TCPA:

> **There is no doubt that soundboard technology "uses" a prerecorded voice to deliver a message to the consumer** . . . . As a result, if a live agent initiates the call with a prerecorded voice message using soundboard technology, the caller must obtain the

> called party's prior express consent.  In other words, the mere
> presence of a live operate with soundboard technology does not
> negate the clear statutory prohibition against initiating a call using a
> prerecorded or artificial voice.  **Nowhere does the TCPA text
> exempt calls where a human selects a prerecorded voice message
> for the called party**.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; 3*5 F.C.C.R. 14640, 14644(F.C.C., Dec. 18, 2020) (emphasis added).

110.    Plaintiffs are aware that these telephone calls used a prerecorded or artificial voice message because of their familiarity with normal human interaction, intonation, manners of speaking, and their inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

111.    None of the calls at issue were placed for emergency purposes.

112.    The Zeitlin Companies did not have the prior express consent (or any consent) from the called parties prior to placing each call.

### PLAINTIFF, JOSEPH SHOEMAKER'S FACTUAL ALLEGATIONS

113.    Mr. Shoemaker is the user of a cellular telephone number ending in 2182.

114.    On April 26, 2018, Mr. Shoemaker received a call from the Zeitlin Companies on behalf of the Scam PAC "Police Officers Defense Alliance."

115.    During the call, the Zeitlin Companies utilized artificial or prerecorded voices in violation of the TCPA.

116.    Mr. Shoemaker was aware that this telephone call used a prerecorded or artificial voice message because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

117.    Mr. Shoemaker never provided prior express consent (or any consent) to the Zeitlin

Companies for this telephone call.

118.    The prerecorded messages utilized by the Zeitlin Companies during the call mislead Mr. Shoemaker into believing that the Scam PAC was seeking donations to support his local police department.

119.    Mr. Shoemaker gave $300 to this Scam PAC.

120.    Because Mr. Shoemaker made a large donation to the Police Officers Defense Alliance, the Zeitlin Companies targeted him and continued to prey on him for additional donations.

121.    After Mr. Shoemaker made his initial donation, he began receiving calls from multiple different Scam PACs seeking donations for their phony causes.

122.    The Zeitlin Companies called Mr. Shoemaker countless times on behalf of additional Scam PACs despite Mr. Shoemaker's requests not to be contacted again.

123.    Many similarly situated consumers have experienced and continue to experience the same, if not worse behavior from the Zeitlin Companies.

124.    For example, the Better Business Bureau includes the following complaints about the Zeitlin Companies' telemarketing activity on behalf of the Police Officers Defense Alliance:

> **October 7,2019:** I Am the POA for my 86 year old father with dementia. I have made several attempt to have this company stop calling my father and soliciting money. Police Officer Defense Alliance continues to call him and have been taking credit card payments. They need to stop preying on, taking advantage of the elderly with memory issues. We want them to stop calling immediately. We would like them to do the right thing and return the money that they had no business taking from him.
>
> **July 12, 2020**: Daily calls asking for money to police. Calls are made to elderly people who leave [sic] in subsidized housing for low income population. Majority of residents in this complex are people for whom English is a second language, and these calls stating "police" are extremely disturbing!!! This "Police" is harassing

elderly DAILY asking for money for police. Despite phone calls, they've recently started to mail requests for money adding even more to daily HARASSMENT. Please help to STOP IT!!!!

**August 3, 2020**: I have repeatedly asked to be removed from any and all mailing lists and contact lists by this company. The [sic] use deceptive tactics when opening the conversation. I. E. Starting the conversation as i they've gotten the wrong number. Then launching into their gimmick. In the beginning they stated they represented Police and Police Unions and made it sound like a charity. Since asking to be removed from the list I get on average 3 to 7 calls a month. I have now just received something to my home asking me for money again. This place may be a super pac but it is a fraud through-and-through. I am the daughter of 2 police officers and told them that I only work with the FOP and that they were being devious in their tactic. I have so far blocked 9 numbers in the 1 year I have tried to get my number taken off this list.

**October 14, 2020**: I was contacted by his organization who was soliciting for a so-called police officer defense fund over the phone, then sent me a letter for a pledge. When I procrastinated on sending in the $20 pledge, they called me a week later to follow up on my pledge. When asked what the money was for, They didn't fully answer, but I went ahead and gave them information to take $20 out of my account. Soon after, my wife looked them up in the Better Business Bureau, and was surprised that it was a scam. I called them to see about getting my charge reversed, and left a message. The following day I still didn't get a Return call, so I left a message again today. I'm assuming I probably won't get a callback from them. Therefore, I'm assuming that they'll not return my call, and I'll have to dispute the charge with my credit card company, American Express. However, I still want to file a complaint with this organization.

**October 15, 2020**: This alleged charity calls at a minimum two to three times a week requesting charity donations. This entity targeted my mother who was severely ill at the time and has since passed away. I advised them that my mother was unavailable to take calls and to please remove our number as I am on the do not call list. They would state they would remove the number but continued to call until I filed a complaint with the FCC. Yesterday, they began calling again. This is harassment.

**February 2, 2021**: I receive several calls daily from a representative collecting money for the Police Officer Defense Alliance. I have repeatedly asked to be removed from their calling list. The phone

numbers that we receive calls from change from day to day. I began calling the numbers back and receive an automated prompt with the option to remove my number from the calling list which I have completed several times now yet that has failed to cease the calls. I have also sent a certified letter to cease and desist all further fundraising activities by calling my phone number yet we are harassed every day with new calls. The same man continues to call and has not updated their calling database to remove my information. They do not have permission to contact me. Several numbers they have called me on have been: 309-245-6051, 779-244-440, 779-244-4448. My desired outcome would be to no longer receive calls/communications from this telemarketer. This company is not a non-profit fundraiser and up to 90% of their proceeds do not get paid out to the cause they claim to be collecting for. They misrepresent themselves as working on behalf of police officers which is very deceiving.[18]

125.    From January 1, 2018 to December 31, 2018, the Police Officers Defense Alliance reported $624,367.22 in total receipts.[19]

126.    Despite raising $624,367.22, the Police Officers Defense Alliance had only $20,000 in independent expenditures, just 3% of the funds it brought in that year.

127.    The Police Officers Defense Alliance made two $10,000.00 payments to North Star Multimedia, a Las Vegas marketing company, for "billboards" and "internet advertising" in support of Dean Heller, for re-election to the U.S. Senate to represent Nevada.

128.    During the same period, the Police Officers Defense Alliance reported $516,484.02 in total disbursements.[20]

129.    Defendant American Technology Services, LLC received $179,606.47 or approximately 35% of all of the Police Officers Defense Alliance's disbursements during this

---

[18] Better Business Bureau, https://www.bbb.org/us/wi/butler/profile/organization/police-officer-defense-alliance-0694-1000032533/complaints (last accessed August 23, 2021).
[19] Federal Elections Commission, https://www.fec.gov/data/committee/C00667865/?cycle=2018 (last accessed February 15, 2022).
[20] *Id.*

period.[21]

130.     Defendant Compliance Consultants, LLC received $187,663.39 or approximately 36% of all of the Police Officers Defense Alliance's disbursements during this period.

131.     Defendant Unified Data Services, LLC received $72,891 or approximately 14% of all of the Police Officers Defense Alliance's disbursements during this period.

132.     In 2018, the Zeitlin Companies received $440,160.86 or 85.22% of all disbursements made by the Police Officers Defense Alliance.

133.     Despite soliciting donations by telemarketing and reporting disbursements for "business phone" in the amount of $2,829.95 to Cox Communications, Inc., a business phone and voice services provider, the Police Officers Defense Alliance did not report a single telemarketing expense in its distributions report for 2018.[22]

134.     Upon information and belief, the payments to the Zeitlin Companies were coded in such a way to conceal the illegal telemarketing operation that was taking place.

135.     For example, the payments to Defendant American Technology Services, LLC were coded as "Software Licensing" and "Technical/Computer Support".

136.     The payments to Defendant Compliance Consultants, LLC were coded as "Compliance Consulting" and "Credit Card Pmt Processing and Verifications."
The payments to Defendant Unified Data Services, LLC were coded as "Caging and Escrow" and "Database Services."

## **PLAINTIFF RICHARD GINDIN'S FACTUAL ALLEGATIONS**

---

[21] *Id.*

[22] *See id.*

137.    Mr. Gindin is the user of a cellular telephone number ending in 7000.

138.    On July 14, 2021, Mr. Gindin received a call from the Zeitlin Companies on behalf of the Scam PAC Honoring American Law Enforcement PAC (HALE PAC).

139.    The call came from (610) 871-5713, which was likely a "spoofed" number.[23]

140.    During the call, the Zeitlin Companies utilized artificial or prerecorded voices in violation of the TCPA.

141.    Mr. Gindin was aware that this telephone call used a prerecorded or artificial voice message because of his familiarity with normal human interaction, intonation, manners of speaking, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

142.    For example, the Zeitlin Companies call began as follows:

> Hi. This is Al calling from the Police and Sherrif's Support Alliance. Our mission is to get lawmakers to focus on advanced training and techniques for the officers as well as a death and disability fund for those that have been wounded or killed in the line of duty.  As a PAC, we endorse representatives Lee Zeldin and Amerish Bera for supporting law enforcement.  Help us elect the people that will back the men and women in blue and effectively handle these issues.  If we were to send you an envelope, would you show your support with a one-time donation?

143.    Mr. Gindin never provided prior express consent (or any consent) to the Zeitlin Companies for this telephone call.

144.    Mr. Gindin requested an envelope which he received by mail a few days after the call.

145.    The Zeitlin Companies called Mr. Gindin again on August 14, 2021 and August 21,

---

[23] Pursuant to 47 U.S.C. § 227(e), it is illegal for a person to "spoof" or "knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value . . . ."  47 U.S.C. §227(e)(5) includes both civil and criminal penalties.

2021 to follow-up and aggressively request he make his donation.

146.    These calls came from (215) 515-6530 and (215) 515-7544, respectively, and were both likely "spoofed" numbers.

147.    The second and third calls were identical and also utilized artificial or prerecorded voices in violation of the TCPA.

148.    Like the Police Officers Defense Alliance, the HALE PAC has received a deluge of online complaints for their telemarketing practices:

> **July 7, 2021**: Company tried to pressure my wife into donating on the phone. she said no multiple times and eventually hung up when they got aggressive. Today we got a letter "confirming" that she had agreed to a $75 pledge with a remittance coupon and a return envelope. Not sure how they got our information, but this is definitely a shady organization with unethical tactics.

> **April 14, 2021**: I thought I was doing a good thing by donating, Since then I have been getting numerous calls every day by some other groups looking for money. I am retired, fixed income, & 20 year old, 198000 + miles car. I will NEVER again donate money to any group.

> **April 2, 2021**: Telephone fraud. They told me on the phone they were asking for donations for the Sheriffs' Training and Memorial Fund. But then I got a thank you letter from a SUPER PAC.

> **March 25, 2021:** I've gotten several calls from these "people" over the last few months, and it's a total scam. One time, I decided to ask a couple questions of the voice on the other line, and it became very clear that the initial caller is a robot/AI of some kind because it would not answer any of my questions in a way that a real human would. It just repeated typical phrases like, "Sorry to hear that" or "I didn't catch that" even though I was speaking very clearly and didn't say anything to suggest that I was going through a tough time. I never advanced through to the people asking for the credit card number, but the other post check out with my experience with the robocallers. It's sad that people are trying to take advantage of others in this way; police are well-funded by taxes already, so it's a scam that shouldn't work.

> **March 11, 2021**: This company was very adamant that I help with

a debit or cc and I told them I wouldn't do that over the phone. I asked them to mail me a pledge form. Once they confirmed they would send it they still kept asking if I would reconsider and give right then and there. I have since received multiple calls a day for a number in Algonquin. It's a different number every time from a "224" area code. I finally answered today and she asked me to pay over the phone because I hadn't sent in my pledge form yet. There was a break in the call and I kept hearing a computer over and over ask, "Hello, is Kristen there? Hello, is Kristen there?" and so on. This is when I hung up. I guess this is just another robo-caller whom I will need to ignore.

**February 9, 2021**: I have repeatedly asked them to stop calling and asking for my deceased father for 3 years now. I've called them, emailed them and got them on the line to no avail. Now they are even calling my cell phone as of today.[24]

149.    From January 1, 2021 to December 31, 2021, the HALE PAC reported $5,647,945.22 in total receipts.[25]

150.    During the same period, the HALE PAC reported $4,844,861.94 in total disbursements.[26]

151.    Defendant American Technology Services, LLC received $80,054.24 from the HALE PAC during this period.[27]

152.    Defendant Compliance Consultants, LLC received $91,826.76 from the HALE PAC during this period.

153.    Defendant Unified Data Services, LLC received $1,877,750.31 from the HALE PAC during this period.

154.    In addition, three other companies, LAV Services LLC, Standard Data Services

---

[24] *See, e.g.,* Better Business Bureau, *https://www.bbb.org/us/wi/wauwatosa/profile/political-organization/police-and-sheriff-support-alliance-0694-1000041990/customer-reviews* (last accessed August 23, 2021).

[25] Federal Elections Commission, https://www.fec.gov/data/committee/C00710178/ (last accessed Feb. 15, 2022).

[26] *Id.*

[27] *Id.*

LLC and Wired 4 Data, LLC received a combined $2,008,442.55 from the HALE PAC during this period.

155.    Upon information and belief, and as to be confirmed during discovery, LAV Services LLC and or LAV Services, LLC (together "LAV Services") is owned, operated and/or controlled by Defendant Zeitlin.

156.    In 2021, LAV Services received $1,600,601.70 in distributions from 21 different SCAM PACs.[28]

157.    On November 3, 2021, LAV Services, LLC, Richard Zeitlin and TPFE, Inc. were sued by three employees in the United States District Court for the Northern District of Alabama for violations of various employment laws.  *See Harbin et al. v. Zeitlin et al*., Civ. No. 1:21-cv-01469-ACA (Dkt. No. 1) (N.D. Ala. Nov. 3, 2021).

158.    Upon information and belief, and as to be confirmed during discovery, Wired 4 Data, LLC is associated with, operated by and/or controlled by Defendant Zeitlin.

159.    In 2021, Wired 4 Data, LLC received $3,330,789.11 in distributions from 21 different SCAM PACs.[29]

160.    Information on file with Nevada's Secretary of State reveals that Wired 4 Data, LLC uses a mailing address, 1009 Whitney Ranch Drive, Henderson, NV 89014, that is associated with Mr. Zeitlin and his other entities.

161.    Like the other Zeitlin Companies, Wired4Data, LLC employs a similar tactic to conceal its identity; it uses a UPS Store mailbox located at 55 Lake Havasu Avenue, Lake Havasu

---

[28] *See* Federal Elections Commission, https://www.fec.gov/data/disbursements/?data_type=processed&recipient_name=LAV+Services (last accessed Feb. 15, 2022).

[29] Federal Elections Commission, https://www.fec.gov/data/disbursements/?data_type=processed&recipient_name=wired+4+data&recipient_name=wired4data (last accessed Feb. 15, 2022).

City, Arizona 86403.

162.     Upon information and belief, and as to be confirmed during discovery, Standard Data Services, LLC is associated with, operated by and/or controlled by Defendant Zeitlin.

163.     In 2021, Standard Data Services, LLC received $1,992,705.01 in distributions from 20 different SCAM PACs.[30]

164.     Like the other Zeitlin Companies, Standard Data Services, LLC employs a similar tactic to conceal its identity; it uses a UPS Store mailbox located at 513 Mill Avenue, SE, New Philadelphia, Ohio 44663.

## **PLAINTIFF DEMYA JOHNSON'S FACTUAL ALLEGATIONS**

165.     At all relevant and material times, Ms. Johnson was the user of a cellular telephone number ending in 8330.

166.     On September 18, 2020, Ms. Johnson received a call from the Zeitlin Companies on behalf of the Scam PAC Honoring American Law Enforcement PAC (HALE PAC).

167.     The call came from (256) 361-1598, which was likely a "spoofed number."

168.     During the call, the Zeitlin Companies utilized artificial or prerecorded voices in violation of the TCPA.

169.     Ms. Johnson was aware that this telephone call used a prerecorded or artificial voice message because of her familiarity with normal human interaction, intonation, manners of speaking, and her inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

170.     Ms. Johnson never provided prior express consent (or any consent) to the Zeitlin

---

[30] Federal Elections Commission, https://www.fec.gov/data/disbursements/?data_type=processed&recipient_name=standard+data (last accessed Feb. 15, 2022).

Companies for this telephone call.

171.    The Zeitlin Companies called Ms. Johnson again on October 7, 2020 (from (251) 320-6838) and October 21, 2020 (from (205) 751-4091) to follow-up and again aggressively request that she make a donation.

172.    The numbers utilized by the Zeitlin Companies on October 7, 2020 and October 21, 2020 were likely "spoofed numbers."

173.    These calls were identical and also utilized artificial or prerecorded voices in violation of the TCPA.

174.    In 2020, Defendant American Technology Services, LLC received $1,162,405.41 from the HALE PAC.[31]

175.    In 2020, Defendant Compliance Consultants, LLC received $1,297,087.03 from the HALE PAC.[32]

176.    In 2020, Defendant Unified Data Services, LLC received $509,647.38 from the HALE PAC.[33]

177.    Combined, in 2020, the Zeitlin Companies received $2,969,139.82 in disbursements from the HALE PAC, which amounts to approximately 94% of all disbursements made by the HALE PAC in 2020.

## PLAINTIFF KIMBERLY STARLING'S FACTUAL ALLEGATIONS

178.    Ms. Starling is the user of a cellular telephone number ending in 6140.

---

[31] Federal Elections Commission, https://www.fec.gov/data/disbursements/?committee_id=C00710178&two_year_transaction_period=2020&data_type=processed (last accessed Feb. 15, 2022).

[32] *Id.*

[33] *Id.*

179.     On December 23, 2020, Ms. Starling received a call from the Zeitlin Companies on behalf of the Scam PAC Honoring American Law Enforcement PAC (HALE PAC).

180.     The call came from (817) 601-1831, which was likely a "spoofed number."

181.     During the call, the Zeitlin Companies utilized artificial or prerecorded voices in violation of the TCPA.

182.     Ms. Starling was aware that this telephone call used a prerecorded or artificial voice message because of her familiarity with normal human interaction, intonation, manners of speaking, and her inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

183.     Ms. Starling never provided prior express consent (or any consent) to the Zeitlin Companies for this telephone call.

184.     Ms. Starling requested an envelope which she received a few days after the call.

185.     In 2020, Defendant American Technology Services, LLC received $1,162,405.41 from the HALE PAC.[34]

186.     In 2020, Defendant Compliance Consultants, LLC received $1,297,087.03 from the HALE PAC.[35]

187.     In 2020, Defendant Unified Data Services, LLC received $509,647.38 from the HALE PAC.[36]

188.     Combined, in 2020, the Zeitlin Companies received $2,969,139.82 in

---

[34] Federal Elections Commission, https://www.fec.gov/data/disbursements/?committee_id=C00710178&two_year_transaction_period=2020&data_type=processed (last accessed Feb. 15, 2022).

[35] Id.

[36] Id.

disbursements from the HALE PAC, which amounts to approximately 94% of all disbursements made by the HALE PAC in 2020.

### PLAINTIFF MATTHEW MCCORMICK'S FACTUAL ALLEGATIONS

189.    Mr. McCormick is the user of a cellular telephone number ending in 9117.

190.    On August 2, 2021, Mr. McCormick received a call from the Zeitlin Companies on behalf of the Scam PAC Police and Trooper Support.

191.    The call came from (972) 450-4941, which was likely a "spoofed number."

192.    During the call, the Zeitlin Companies utilized artificial or prerecorded voices in violation of the TCPA.

193.    Mr. McCormick was aware that this telephone call used a prerecorded or artificial voice message because of his familiarity with normal human interaction, intonation, manners of speaking, identical repeated portions of the call, and his inability to engage the prerecorded or artificial voice in reciprocal, sensical communication or banter.

194.    Mr. McCormick never provided prior express consent (or any consent) to the Zeitlin Companies for this telephone call.

195.    In 2021, Defendant Unified Data Services, LLC received $296,622.45 in disbursements from Police and Trooper Support.[37]

196.    In addition, LAV Services LLC, Standard Data Services LLC and Wired 4 Data, LLC received a combined $363,278.15 from Police and Trooper Support during this period.

197.    Unified Data Services, LLC, LAV Services LLC, Standard Data Services LLC and Wired 4 Data, LLC also received a combined $268,014.86 in "independent expenditures" in

---

[37] Federal Elections Commission, https://www.fec.gov/data/disbursements/?committee_id=C00774323&two_year_transaction_period=2022&data_type=processed (last accessed Feb. 15, 2022).

support of Abigail Spanberger and John Rutherford.[38]

198.    Upon information and belief, the Zeitlin Companies have recently altered their scheme to increase the perceived amount of purported "independent expenditures" by its SCAM PACs.

199.    During the prerecorded calls, the Zeitlin Companies now add a statement supporting or opposing a candidate, so that the SCAM PAC they are calling for can divert funds to the Zeitlin Companies as both operating expenditures and as independent expenditures.

200.    For example, the call received by Mr. McCormick played the following prerecorded message:

> Hi.  This is Glen calling from the Police and Trooper Support.  Our mission is to seek police training, improvement, as well as to advocate for death and disability fund for those officers killed or injured on the job, with the passage of better laws.  As a PAC, we approve of representatives Abigail Spanberger and John Rutherford for supporting law enforcement.  Help us elect the people that will back the men and women in blue, and will effectively handle these issues.  If we were to send you an envelope, would you show your support with a one time donation?

201.    The call received by Mr. McCormick concluded with the following prerecorded message:

> Okay.  Thank you for your time. This call and all expenses were paid for by the Police and Trooper Support PAC.  We approve of representatives  Abigail  Spanberger  and  John  Rutherford  for supporting law enforcement.  Any gifts or contributions made are not tax deductible. Thanks.  Bye bye.

## THE ZEITLIN COMPANIES' LIABILITY

202.    Because the Zeitlin Companies utilize artificial, prerecorded messages, and/or

---

[38]  Federal Elections Commission, https://www.fec.gov/data/independent-expenditures/?data_type=processed&committee_id=C00774323&is_notice=false&most_recent=true&min_date=01%2F01%2F2021&max_date=12%2F31%2F2022 (last accessed Feb. 15, 2022).

soundboard driven technology calls, the Zeitlin Companies were required to obtain prior express consent from the persons to whom the Zeitlin Companies made calls.  *See* 47 U.S.C. § 227(b).

203.    Plaintiffs never provided the Zeitlin Companies with any consent, written or otherwise.

204.    Plaintiffs never provided any of the Scam PACs with any consent, written or otherwise.

205.    Accordingly, each of the Zeitlin Companies' calls to Plaintiffs using an artificial or prerecorded voice violates 47 U.S.C. § 227(b).

206.    For violations of 47 U.S.C. § 227(b), Plaintiffs are entitled to a minimum of $500 per call.

207.    Plaintiffs are entitled to up to $1500 per call if the Zeitlin Companies' actions are found to be knowing or willful.  47 U.S.C. § 227(b)(3)(C).

208.    Plaintiffs have suffered concrete harm because the Zeitlin Companies' unwanted and unsolicited calls, including, but not limited to:

- Lost time tending to and responding to the unsolicited calls;

- Invasion of Privacy; and

- Nuisance.

209.    These forms of actual injury are sufficient for Article III standing purposes.  *See Leyse v. Bank of Am. Nat'l. Ass'n,* 804 F.3d 316, 326 (3d Cir. 2015).

## CLASS ACTION ALLEGATIONS

210.    Plaintiffs bring this action individually and all others similarly situated as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23.  Plaintiffs incorporate herein, by

reference, all other paragraphs and footnotes of this Class Action Complaint as if fully set forth herein at length.

211.    Pursuant to Rule 23(b), Plaintiff seeks certification of a class defined as follows:

> All persons and entities throughout the United States (1) to whom Defendants placed a call, (2) directed to a number assigned to a cellular telephone service, (3) with an artificial or prerecorded voice, (4) from September 27, 2017 through the date of class certification.

212.    Excluded from the Class are the Zeitlin Companies and any entities in which the Zeitlin Companies have a controlling interest; the Zeitlin Companies' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; the undersigned counsel for plaintiffs, and any claims for personal injury, wrongful death, and/or emotional distress.

213.    The Class claims all derive directly from a single course of conduct by Defendants. Defendants engaged in uniform and standardized conduct toward the Class.  They did not differentiate, in degree of care or candor, their actions or inactions among individual Class members.  The objective facts are the same for all Class members.  Within the two claims for relief set forth below, the same legal standards under federal law govern.  Accordingly, Plaintiffs bring this lawsuit as a Class Action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Federal Rule of Civil Procedure 23.

214.    This action has been brought and may be properly maintained as a Class Action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. This action satisfies the numerosity, commonality, typicality and adequacy requirements of those provisions.

215.    The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable, as the Class is comprised of hundreds, if not thousands, of individuals.

216.    The exact number and identities of the persons who fit within the Class are ascertainable in that the Zeitlin Companies and third parties maintain written and electronically stored data showing:

a.    The time period(s) during which Defendants placed their calls;

b.    The telephone numbers to which Defendants placed their calls;

c.    The telephone numbers for which Defendants had prior express consent;

d.    The purposes of such calls; and

e.    The names and addresses of Class members.

217.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

a.    Whether Defendants (or someone acting on their behalf) used an artificial or prerecorded voice in placing the calls;

b.    Whether Defendants (or someone acting on their behalf) obtained prior express consent;

c.    Whether Plaintiffs and the Class were damaged thereby, and the extent of damages for such violations; and

d.    Whether Defendants should be enjoined from engaging in such conduct in the future.

218.    Plaintiffs are members of the Class in that the Zeitlin Companies placed calls to them using an artificial or prerecorded voice.

219.    Plaintiffs' claims are typical of the claims of the Members of the Class in that they arise from the Zeitlin Companies' uniform conduct and are based on the same legal theories as these claims.

220.    Plaintiffs have no interests antagonistic to, or in conflict with, the Class.

221.    Plaintiffs will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent them and the Class.

222.    The Zeitlin Companies have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

223.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

224.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class Member make individual actions uneconomical.

225.    Common questions will predominate, and there will be no unusual manageability issues.

226.    The Class Members are ascertainable as all Defendants can identify every single class member from their own records.  Accordingly, mere ministerial acts on the part of Defendants and the potential Class Members will be necessary to ascertain all potential Class Members.

227.    In this action, for the reasons set forth both above and below, Plaintiffs seek all statutorily appropriate and available relief from Defendants for violating the TCPA and for the Defendants unjustly enriching themselves and their affiliates, assigns, employees, officers, directors, and other representatives at the expense of Plaintiffs and all others similarly situated as defined above.

35

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiffs and the TCPA Class)**

228.    Plaintiffs and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

229.    The Zeitlin Companies placed, or had placed on their behalf, prerecorded and autodialed telephone calls to Plaintiffs' and the TCPA Class Members' cellular telephone numbers without prior express consent.

230.    The telephone calls were not made for emergency purposes.

231.    The Zeitlin Companies have therefore violated 47 U.S.C. § 227(b).

232.    As a result of the Zeitlin Companies' unlawful conduct, Plaintiffs and the Class Members are entitled to an award of $500 in statutory damages for each violation per call, pursuant to 47 U.S.C. § 227(b)(3)(B).

233.    Plaintiffs and the Class Members are entitled to an award of treble damages in an amount up to $1,500 for each violation per call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

234.    Each of the Zeitlin Companies are jointly and severally liable for all of the unlawful conduct committed by the Zeitlin Companies.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment/Disgorgement/Restitution**

235.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

236.    The Zeitlin Companies have willfully and consciously engaged in a massive and profitable scheme, pattern and/or practice of intentionally invading the privacy of numerous persons in violation of federal law and established principles of privacy, expressly designed to enrich the Zeitlin Companies at the expense of the Plaintiffs and the Class Members.

237.     The Zeitlin Companies have obtained substantial benefit as a direct result of their invasion of the privacy of the Plaintiffs and Class Members, which in equity and good conscience ought not be able to keep.

238.     Under principles of equity and justice, the Zeitlin Companies should be required to disgorge the above-described unjust enrichment to Plaintiffs and the Class Members in amounts to be determined at trial.

239.     Each of the Zeitlin Companies are jointly and severally liable for all of the unlawful conduct committed by the Zeitlin Companies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their  counsel as Class Counsel;

B.     An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(b) and unjustly enriched Defendants;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages;

E.     An award of treble damages;

F.     Restitution and/or disgorgement of Defendants' ill-gotten gains;

G.     Pre- and post-judgment interest;

H.     An award of reasonable attorneys' fees and costs, and

I.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

s/ *Eric H. Weitz*_____
Eric H. Weitz, Esquire
Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

s/ *David S. Senoff*_____
David S. Senoff, Esquire
Daniel F. Fee, Esquire*
**FIRST LAW STRATEGY GROUP, LLC**
121 S. Broad Street, Suite 300
Philadelphia, PA 19107
Tel: (215) 258-4700
Fax: (215) 258-4777
dsenoff@firstlawstrategy.com
dfee@firstlawstrategy.com

*Counsel for Plaintiffs
and the Proposed Classes*

* Petition for Admission pending.