## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH SHOEMAKER, RICHARD GINDIN, DEMYA JOHNSON, KIMBERLY STARLING, and MATTHEW MCCORMICK, individually and on behalf of all others similarly situated, | : : : : : : | CIVIL ACTION NO. 1:21-CV-1668 (Judge Conner) |
| Plaintiffs | : : | |
| v. | : : | |
| RICHARD ZEITLIN, AMERICAN TECHNOLOGY SERVICES, LLC, UNIFIED DATA SERVICES, LLC, COMPLIANCE CONSULTANTS, LLC, and JOHN DOES 1-10, corporate entities and individuals presently unknown, | : : : : : : : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Named plaintiffs bring this putative class action against defendants Richard Zeitlin and various entities associated with Zeitlin, asserting claims for violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and unjust enrichment under Pennsylvania law.  Defendants move to dismiss plaintiffs' amended class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  Defendants also move to strike a portion of plaintiffs' class allegations under Rule 12(f).  We will partially grant defendants' motion to dismiss, and we will deny their motion to strike.

I.    **Factual Background & Procedural History**

Defendants are a telemarketing entrepreneur, Zeitlin, and a collection of entities he uses to conduct various telemarketing endeavors—American Technology Services, LLC ("ATS"); Unified Data Services, LLC ("UDS"); Compliance Consultants, LLC ("CC").  (See Doc. 33 ¶¶ 3-4 & n.1, 42, 44, 76-85, 107).  Zeitlin is a resident of Nevada; ATS, UDS, and CC are Delaware limited liability companies with principal places of business in Nevada.  (See id. ¶¶ 76, 78, 80, 82).  Named plaintiffs Joseph Shoemaker, Richard Gindin, DeMya Johnson, Kimberly Starling, and Matthew McCormick are five individuals residing variously in Pennsylvania, Texas, and Sweden who allege defendants initiated robocalls to their cell phones without their prior consent on various dates between April 26, 2018, and August 2, 2021.  (See id. ¶¶ 64-75, 85; see generally id. ¶¶ 112-203).  The prerecorded voice on each of these calls solicited donations on behalf of a political action committee ("PAC") purporting to support law enforcement, and one of the calls successfully obtained a donation from plaintiff Shoemaker.  (See id. ¶¶ 114, 119, 121, 138, 145, 166, 179, 190).

Plaintiffs' allegations, however, go beyond accusing defendants of engaging in robocalls: plaintiffs allege Zeitlin is the key figure in a "scheme" to solicit donations for PACs secretly controlled by Zeitlin or individuals in league with Zeitlin and whose sole *raison d'être* is to funnel donated money to Zeitlin and his companies.  (See id. ¶¶ 5-6, 29-32, 42).  Plaintiffs provide a lengthy list of PACs they claim are "scams" orchestrated by or in collusion with Zeitlin, two of which feature prominently in the alleged events underlying the matter *sub judice*: Honoring

American Law Enforcement PAC ("HALE") and the Police Officers Defense Alliance LLC ("PODA").  (See e.g., id. ¶¶ 29, 114, 138, 166, 179).  Plaintiffs assert the PACs on their list share numerous officers, some of whom are business associates or friends of Zeitlin.  According to the complaint, these PACs have no genuine interest in or intention of meaningfully advancing the causes they claim to support.  (See id. ¶¶ 4-6, 33-41, 50, 126-127).  Plaintiffs allege Zeitlin and his companies partner with these PACs and then make millions of robocalls soliciting donations on their behalf.  (See id. ¶¶ 3-4, 42).  The calls result in hundreds of thousands—if not millions—of dollars in donations to the PACs annually.  (See id. ¶¶ 1, 5, 58; see also id. ¶¶ 125, 149).  The PACs supposedly then transfer the lion's share of the money raised through these donations to Zeitlin and his companies "through an array of bogus and inflated overhead expenditures."  (See id. ¶¶ 5, 42, 46, 48, 58, 149-156, 177).

According to plaintiffs, Zeitlin and his companies have been the subject of journalistic investigations detailing the scheme.  (See id. ¶¶ 30 & n.5, 32 n.7, 58).  They also claim the passthrough nature of these PACs can be seen by examining the PACs' filings with the Federal Election Commission ("FEC").  (See id. ¶¶ 45-46; see generally id. ¶¶ 125-197).[1]  Namely, they claim the reports show the PACs in question pay out an overwhelming preponderance of their income to entities owned

---

[1] See also 2018 Financial Summary for Police Officers Defense Alliance LLC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00667865/?cycle=2018 (last visited Mar. 23, 2023) ("PODA 2018 FEC Report"); 2021-22 Financial Summary for Honoring American Law Enforcement PAC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00710178/ (last visited Mar. 23, 2023) ("HALE 2021-22 FEC Report").

or controlled by Zeitlin.  (See Doc. 33 ¶¶ 45-46, 48, 58; see generally id. ¶¶ 125-197).

These filings also purportedly show the PACs spend comparatively miniscule

amounts on activities plausibly connected to their purported political or social

objectives.  (See id. ¶¶ 4-6, 126-127).  To conceal the relationship between the PACs,

Zeitlin, and Zeitlin-controlled companies, plaintiffs allege Zeitlin utilizes a "vast

web of inextricably intertwined corporate entities" whose identities he obscures by

employing unregistered fictious names, UPS Store mailboxes in far-flung states,

and mail-forwarding services.  (See id. ¶¶ 51-57, 99, 106, 154-164).  Plaintiffs also

allege Zeitlin operates his "vast web" of telemarketing companies as "alter egos of

one another" constituting "a single economic enterprise."  (See id. ¶¶ 99-106).

Plaintiffs initiated this putative class action against defendants on behalf of

themselves and others similarly situated.  The action is now proceeding pursuant to

plaintiffs' amended complaint (Doc. 33).  Defendants move to dismiss plaintiffs'

amended complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and

12(b)(6), and partially strike their class allegations under Rule 12(f).  The motions

are fully briefed and ripe for disposition.

## II.    **Legal Standards**

### A.    **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides a court may dismiss a claim

for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such

jurisdictional challenges take one of two forms: (1) parties may levy a "factual"

attack, arguing one or more of the pleading's factual allegations are untrue,

removing the action from the court's jurisdictional ken; or (2) they may assert a

"facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues a claim is not within the court's jurisdiction. <u>Lincoln Benefit Life Co. v. AEI Life, LLC</u>, 800 F.3d 99, 105 (3d Cir. 2015) (quoting <u>CNA v. United States</u>, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty assertion of jurisdiction would be improper. <u>See</u> <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000).

### B.    Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. <u>See</u> FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. <u>See</u> <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002); <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. <u>See</u> <u>Carteret Sav. Bank</u>, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, <u>see</u> <u>Mellon Bank (East) PSFS Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, <u>see</u> <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324,

330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

C.   **Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints which fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### D.    Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  See FED. R. CIV. P. 12(f).  District courts have "considerable discretion" in resolving a Rule 12(f) motion.  See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)).  In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims.  See id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2016).  A party is prejudiced when the

challenged pleading "confuses the issues" or places an undue burden on the responding party.  Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

## III.  Discussion

Plaintiffs advance two causes of action: they claim defendants violated Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating illegal robocalls to their cell phones, and they claim defendants are liable to them for unjust enrichment under Pennsylvania common law.  (See Doc. 33 ¶¶ 228-39).  Plaintiffs also seek certification of a class comprising roughly "[a]ll persons and entities throughout the United States" who received an illegal robocall initiated by defendants between "September 27, 2017 through the date of class certification."  (See id. ¶ 211).

Defendants advance four challenges to plaintiffs' amended complaint.  They argue plaintiffs' amended complaint should be dismissed in part or *in toto* for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim.  They also contend plaintiffs' class allegations should be partially stricken for lack of subject matter jurisdiction on the ground the particular provision of the TCPA under which plaintiffs bring this action was a constitutional nullity during a portion of the proposed class period.  We will begin with defendants' two arguments related to subject matter jurisdiction.

### A.    Subject Matter Jurisdiction

Plaintiffs assert we have subject matter jurisdiction over the above-captioned action because they bring their primary claim under 47 U.S.C. § 227(b)(3).  (See Doc. 33 ¶ 59).  Section 227(b)(3) creates a private cause of action against violators of the

TCPA, see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 374-75 (2012) (quoting 47 U.S.C. § 227(b)(3)), and plaintiffs allege defendants violated Section 227(b)(1)(A)(iii) of the TCPA, (see Doc. 33 ¶¶ 228-234).  Because the TCPA is a federal law, federal courts have federal question jurisdiction over claims brought under Section 227(b)(3).  See Mims, 565 U.S. at 372, 386-87.  Nonetheless, defendants contend we lack subject matter jurisdiction over some of plaintiffs' claims because the United States Supreme Court's decision in Barr v. American Ass'n of Political Consultants ("AAPC"), 591 U. S. ____, 140 S. Ct. 2335 (2020), purportedly rendered Section 227(b)(1)(A)(iii) an unenforceable nullity from November 2, 2015 (when Congress amended the TCPA to include the provision AAPC deemed unconstitutional) through the issuance of AAPC on July 6, 2020.  (See Doc. 39 at 3, 47-52); see also Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (codified as amended at 47 U.S.C. § 227).

As a threshold matter, we must decide whether defendants' arguments related to the enforceability of Section 227(b)(1)(A)(iii) in the relevant time period are best considered under Rule 12(b)(1) or Rule 12(b)(6).  The absence of a constitutionally valid statute under which to bring a claim "does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (citations omitted).  Consequently, district courts possess jurisdiction over a claim so long as the constitutional validity of the cause of action is arguable.  See id.  Only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and

frivolous" is dismissal under Rule 12(b)(1) appropriate.  See id. (quoting Bell

v. Hood, 327 U.S. 678, 682-83 (1946)).  Our court of appeals likewise advises "[w]hen

disposing of a claim brought under an unconstitutional statute, courts ordinarily

deny the claim on the merits, on the ground that the statute under which relief is

sought is unconstitutional, rather than for lack of subject matter jurisdiction."

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 82 (3d Cir. 2003) (citing, *inter alia*,

Martin v. United Way of Erie Cnty., 829 F.2d 445, 447 (3d Cir. 1987); Kulick

v. Pocono Downs Racing Ass'n, 816 F.2d 895, 898 (3d Cir. 1987)).

　　　　Defendants are not the first to raise a jurisdictional challenge regarding

enforceability of the TCPA between 2015 and July 6, 2020.  Many courts, including

some in our circuit, have addressed these arguments under Rule 12(b)(1) because

they attack the constitutional validity of Section 227(b)(1)(A)(iii) during the stated

time period.  See, e.g., Morales v. Sunpath Ltd., No. 1:20-CV-1376, 2022 WL 610766,

at *4 (D. Del. Feb. 1, 2022) (citations omitted); Cunningham v. Matrix Fin. Servs.,

LLC, 531 F. Supp. 3d 1164, 1181 (E.D. Tex. 2021); Hussain v. Sullivan Buick-

Cadillac-GMC Truck, Inc., 506 F. Supp. 3d 1242, 1245 (M.D. Fla. 2020); Creasy

v. Charter Commc'ns, Inc., 489 F. Supp. 3d 499, 504-05 (E.D. La. 2020).  Others have

found enforceability, even if raised under Rule 12(b)(1), to be more appropriately

considered under Rule 12(b)(6) because the analysis hinges on how the court

construes the anti-robocall provision in light of AAPC.  See, e.g., Lindenbaum

v. Realgy, LLC, 13 F.4th 524, 527-28 (6th Cir. 2021), *cert.* denied, ___ U.S. ___, 142 S.

Ct. 1362 (2022); Pavelka v. Charter Commc'ns, Inc., No. 3:20-CV-1557, 2021 WL

5566390, at *3 (D. Conn. Nov. 29, 2021); Williamson v. Irving K Motor Co., No. 3:21-CV-1599, 2022 WL 2053179, at *4 (N.D. Tex. June 7, 2022).

We find the reasoning and case law supporting the latter view more persuasive.  Defendants concede their position on Section 227(b)(1)(A)(iii) is "controversial."  (See Doc. 39 at 3).  As we will discuss *infra*, the effect of AAPC on Section 227(b)(1)(A)(iii) is amenable to multiple reasonable constructions.  The success of defendants' argument depends entirely on which construction we adopt.  See Steel Co., 523 U.S. at 89 (quoting Bell, 327 U.S. at 689).  Moreover, even if we were to adopt defendants' proffered construction, their reading would defeat only a portion of the claims advanced in the amended complaint—some plaintiffs will still theoretically be entitled to relief.  See Lindenbaum, 13 F.4th at 527.  Plaintiffs' claims under Section 227(b)(1)(A)(iii) are not wholly insubstantial or frivolous, see Steel Co., 523 U.S. at 89; they are substantial and colorable.  We will therefore consider defendants' arguments regarding enforceability under Rule 12(b)(6) rather than Rule 12(b)(1).

## B.    Personal Jurisdiction

Section 227 of the TCPA does not authorize nationwide service of process.  See 47 U.S.C. § 227; Mims, 565 U.S. at 381 n.11.  Thus, we may exercise personal jurisdiction over a nonresident of the forum state only to the extent authorized by the law of the forum.  See Fed. R. Civ. P. 4(e), (k)(1); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 297 (3d Cir. 1985); see also Fischer v. FedEx, 42 F.4th 366, 382 (3d Cir. 2022) (citing Max Daetwyler, 762 F.2d at 297), *cert.* denied, ___ U.S. ___, 143 S. Ct. 1001 (2023).  Pennsylvania's long-arm statute grants jurisdiction coextensive

with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing 42 PA. CONS. STAT. § 5322(b)).  Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310 (1945).  Under this test, plaintiff must show the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  See id. at 316 (internal quotation marks and citations omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted).  The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), with the focus on whether the defendant has fair warning they may be subject to suit in the forum, see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); Marten, 499 F.3d at 296.  "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  World-Wide Volkswagen, 444 U.S. at 298 (internal quotation marks and citation omitted).

Federal courts must possess one of two forms of personal jurisdiction to comport with these principles.  See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)).  General jurisdiction allows a court to exercise jurisdiction over all claims against a party possessing contacts with the forum state so "'continuous and systematic' as to render them essentially at

12

home" there.  <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127 (2014) (quoting <u>Goodyear</u>

<u>Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (citing

<u>Helicopteros</u>, 466 U.S. at 414 n.9)); <u>Chavez v. Dole Food Co.</u>, 836 F.3d 205, 223 (3d

Cir. 2016) (*en banc*).  Specific jurisdiction, on the other hand, allows the court to

hear only claims arising out of or relating to the defendant's contacts with the forum

state.  <u>Helicopteros</u>, 466 U.S. at 414 n.8; <u>Telcordia Tech Inc. v. Telkom SA Ltd.</u>, 458

F.3d 172, 177 (3d Cir. 2006).

Plaintiffs proceed solely on a theory of specific jurisdiction.  (<u>See</u> Doc. 46 at

20-21).  Specific jurisdiction usually is assessed on a claim-by-claim basis.  <u>O'Connor</u>

<u>v. Sandy Lane Hotel Co.</u>, 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing <u>Remick</u>, 238 F.3d

at 255-56).  This is true even when, like here, plaintiffs bring a putative class action

because, to paraphrase our court of appeals, a named plaintiff cannot accomplish as

a representative of a class what they cannot achieve on their own.  <u>See</u> <u>Kauffman</u>

<u>v. Dreyfus Fund, Inc.</u>, 434 F.2d 727, 734 (3d Cir. 1970); <u>see also</u> <u>Fischer</u>, 42 F.4th at

375.  Specific jurisdiction requires each named plaintiff to "establish with

reasonable particularity" (1) defendants directed their activities at the forum state,

(2) each claim arises out of defendants' activities in Pennsylvania, and (3) exercising

personal jurisdiction in Pennsylvania will not offend traditional notions of fair play

and substantial justice.[2]   See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 129-30 (3d Cir. 2020) (citations and internal quotation marks omitted).

Defendants contest the merits of Shoemaker and Gindin's claims but do not contest our specific jurisdiction over those claims.  (See Doc. 39 at 38-45; Doc. 50 at 14, 18).  Nor could they.  Shoemaker and Gindin are residents of Pennsylvania and they allege defendants placed or directed illegal robocalls to their cell phones, both of which bear Pennsylvania area codes.  (See Doc. 33 ¶¶ 61, 64, 66, 114, 138).  We reasonably may infer plaintiffs' injuries—the phone calls they received—occurred in Pennsylvania.  See Shelton v. Nat'l Gas & Elec., LLC, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019).  By directing calls to Pennsylvania residents possessing Pennsylvania phone numbers, defendants purposely availed themselves of Pennsylvania and its laws.  See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (citations omitted)); see also Abramson v. CWS Apartment Homes, LLC, No. 16-426, 2016 WL 6236370, at *4 & n.47 (W.D. Pa. Oct. 24, 2016) (collecting

---

[2] Plaintiffs' TCPA and unjust enrichment claims arise from phone calls defendants allegedly placed or directed to plaintiffs.  (See Doc. 33 ¶¶ 228-239; see also Doc. 46 at 2-4 (describing plaintiffs' unjust enrichment claims as being "concomitant" with TCPA claims)).  Hence, we may consider the two substantive claims together when ascertaining the presence of contacts necessary to support specific jurisdiction.  See O'Connor, 496 F.3d at 318 n.3.

cases).  We possess specific jurisdiction over the claims brought by Shoemaker and Gindin against all defendants.[3]

Johnson, Starling, and McCormick, however, are not residents of Pennsylvania.  Johnson was a resident of Alabama at the time of his call and currently resides in Sweden.  (See Doc. 33 ¶¶ 69-70).  Starling and McCormick are residents of Texas.  (See id. ¶¶ 72, 74).  None of the three allege they received their calls while in Pennsylvania or attribute a Pennsylvania phone number to their cell phones.  Insofar as can be reasonably inferred from plaintiffs' amended complaint, it is entirely possible Johnson, Starling, and McCormick have never set foot in Pennsylvania.  We simply cannot say defendants' alleged conduct toward these three plaintiffs was directed at the Commonwealth of Pennsylvania.  See Danziger,

---

[3] Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to ATS, UDS, CC, or any of the other named entities in the amended complaint.  (See Doc. 39 at 43-44).  In support of this argument, defendants submit an affidavit from Zeitlin averring he is "neither an owner nor an officer" of any of the named entities and does "not . . . operate, control or have the right and ability to supervise, direct or control" any of the entities.  (See Doc. 40).  Defendants also argue we lack personal jurisdiction over Gindin's claim because ATS, UDS, and CC were all dissolved by the time Gindin received his call on July 14, 2021.  (See Doc. 39 at 11, 44).  Defendants submit Delaware public records purporting to demonstrate the claimed dissolution.  (See Docs. 39-3, 39-4, 39-5).  Plaintiffs dispute the accuracy of these records and point to other records indicating the entities were still operating after the date claimed by defendants.  (See Doc. 46 at 5-8).  Zeitlin's true relationship with the entities named in the amended complaint and the legal status of those entities throughout the period of time relevant to this action are disputes of fact reserved for resolution by the trier of fact.  See Carteret Sav. Bank, 954 F.2d at 148.  Plaintiffs plead sufficient facts supporting specific jurisdiction over Zeitlin, ATS, UDS, and CC to survive a motion to dismiss under Rule 12(b)(2).  See Metcalfe, 566 F.3d at 330; Carteret Sav. Bank, 954 F.2d at 142 n.1.

948 F.3d at 129-30.  We will dismiss Johnson's, Starling's, and McCormick's as named plaintiffs without prejudice.[4]

### C.    Failure to State a Claim

#### 1.    *TCPA*

Plaintiffs' TCPA claims are grounded in defendants' alleged violations of Section 227(b)(1)(A)(iii).  Consequently, we must address defendants' threshold assertion that the TCPA's prohibition on robocalls was unenforceable during part of the time period relevant to plaintiffs' claims.

##### a.    <u>Enforceability</u>

The TCPA prohibits certain undesirable telemarketing practices.  <u>See</u> <u>Facebook, Inc. v. Duguid</u>, 593 U.S. ___, 141 S. Ct. 1163, 1167-68 (2021); <u>AAPC</u>, 140 S. Ct. at 2343-44 & n.1.  Section 227(b) of the TCPA specifically prohibits initiating a robocall to a cell phone unless the call is made for "emergency purposes," the recipient has given their prior express consent, or the call falls within an exemption created by the Federal Communications Commission.  <u>See</u> 47 U.S.C.

---

[4] District courts cannot dismiss a claim for lack of personal jurisdiction without first considering transferring the claim to a more appropriate forum under 28 U.S.C. § 1631.  <u>See</u> <u>Danziger</u>, 948 F.3d at 132.  Section 1631 provides the original court "shall, if it is in the interest of justice, transfer such action . . . to any other such court" in which the case could have been brought when it was filed.  <u>See</u> 28 U.S.C. § 1631.  The court may transfer the entire action or a portion of the action.  <u>See</u> <u>D'Jamoos</u>, 566 F.3d at 110.  The amended complaint is silent with respect to where Johnson, Starling, and McCormick received the calls at issue, and it does not specify an area code associated with any of their cell phones; it is thus unclear in which court their claims could have been brought.  Accordingly, we will dismiss Johnson, Starling, and McCormick as named plaintiffs, without prejudice to their ability to participate in this lawsuit as putative class members or to bring their individual claims in an appropriate forum.

§ 227(b)(1)(A)(iii), (2)(C); see also AAPC, 140 S. Ct. at 2344-45 (citing 47 U.S.C. § 227(b)(1)(A)(iii)).  The TCPA also provides a private cause of action against violators of its provisions.  See 47 U.S.C. § 227(b)(3).  Violators of Section 227(b)(1)(A)(iii) are liable for the plaintiff's actual damages or statutory damages of $500, whichever is greater; for willful or knowing violations, damages are trebled. See id. § 227(b)(3); see also AAPC, 140 S. Ct. at 2345 (citing 47 U.S.C. § 227(b)(3)).

Congress enacted Section 227(b)(1)(A) in 1991.  See AAPC, 140 S. Ct. at 2344. Originally, Section 227(b)(1)(A) prohibited, in relevant part, "'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or prerecorded voice' to 'any telephone number assigned to a . . . cellular telephone service.'"  See id. (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395-96) (codified at 47 U.S.C. § 227)) (emphasis omitted).  Congress amended Section 227(b)(1)(A) in 2015 to include an exception for calls "made solely to collect a debt owed to or guaranteed by the United States."  See id. at 2344-45 (citation omitted).  The Supreme Court struck down this exception on July 6, 2020, in its plurality opinion in AAPC.  See generally id.

Most relevant to defendants' arguments, six Justices agreed the exception for government debt collectors "impermissibly favored debt-collection speech . . . in violation of the First Amendment," although they differed significantly as to how they arrived at this conclusion.  See id. at 2343 (plurality opinion).  Seven Justices then agreed the unconstitutional provision was severable from Section 227(b)(1)(A)(iii) and, accordingly, invalidated the government-debt exception but

left in place "the longstanding robocall restriction." See id. at 2355.  The justices,

however, failed to specify whether they intended the severance to apply only

prospectively or retroactively.  Justice Kavanaugh, writing for himself, the Chief

Justice, and Justice Alito, addressed the implications of severance in footnote 12:

> [A]lthough our decision means the end of the
> government-debt exception, no one should be penalized
> or held liable for making robocalls to collect government
> debt after the effective date of the 2015 government-debt
> exception and before the entry of final judgment by the
> District Court on remand in this case . . . .  On the other
> side of the ledger, our decision today does not negate the
> liability of parties who made robocalls covered by the
> robocall restriction.

Id. at 2355 n.12.  Justice Gorsuch, dissenting on the question of severance, took

issue with this footnote.  See id. at 2366 (Gorsuch, J., concurring in the judgment in

part and dissenting in part).  Joined by Justice Thomas, Justice Gorsuch observed

the logic of footnote 12 "shields *only* government-debt collection callers from past

liability . . . [and] endors[es] the very same kind of content discrimination we say we

are seeking to eliminate."  Id.

Highlighting the tension between the AAPC plurality and Justice Gorsuch's

partial concurrence, defendants present two arguments against the validity of some

of plaintiffs' TCPA claims and the scope of plaintiffs' class allegations.  First, they

argue severance applies prospectively only, leaving Section 227(b)(1)(A)(iii)

unenforceable between its enactment in 2015 and the Supreme Court's decision in

AAPC.  (See Doc. 39 at 51).  Second, even if severance does apply retroactively,

they argue—as Justice Gorsuch suggested—footnote 12 operates to create a new

content-based restriction on speech, once again rendering Section 227(b)(1)(A)(iii) unenforceable between 2015 and issuance of AAPC.  (See id. at 51-52).

Our court of appeals has not yet had occasion to consider these questions. In the immediate wake of AAPC, a handful of district courts determined the decision rendered Section 227(b)(1)(A)(iii) retroactively unenforceable.  See, e.g., Creasy, 489 F. Supp. 3d at 503; Cunningham, 531 F. Supp. 3d 1164 (citing Creasy, 489 F. Supp. 3d 499); Hussain, 506 F. Supp. 3d at 1244-45 (same); Lindenbaum v. Realgy, LLC, 497 F. Supp. 3d 290 (N.D. Ohio 2020) (same), rev'd, 13 F.4th 524 (6th Cir. 2021).  As the dust has settled, however, a strong majority—including several courts in this circuit—has coalesced around the opposite view, that Section 227(b)(1)(A)(iii) is fully enforceable as to robocalls predating AAPC.  See, e.g., Morales, 2022 WL 610766, at *6 & n.78 (collecting cases); Franklin v. Navient, Inc., 534 F. Supp. 3d 341, 346-47 (D. Del. 2021); Williamson, 2022 WL 2053179, at *6 (citations omitted); see also Boisvert v. Carnival Corp., No. 8:20-CV-2076, 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021) (judge who decided Hussain reversing course and adopting emerging majority view).  Most significantly, the Court of Appeals for the Sixth Circuit reversed the district court's decision in Lindenbaum and rejected the positions now advanced by defendants regarding retroactivity and the First Amendment.  See Lindenbaum, 13 F.4th at 528-30.  The Sixth Circuit reasoned that severance, at least in this context, was an act of constitutional interpretation capable of applying retroactively.  See id. at 529-30.  The court explained: AAPC "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then

interpreted what the statute has always meant in its absence." Id. at 530 (quoting Collins v. Yellen, 594 U.S. ___, 141 S. Ct. 1761, 1788-89 (2021)) (alteration in original). The court also squarely rejected the notion applying the anti-robocall provision to telemarketers not seeking to collect government-related debt during the retroactive period created a "First Amendment problem." See id.

Adding to the persuasive weight of the Sixth Circuit's decision in Lindenbaum are two district court cases from our own circuit. See Morales, 2022 WL 610766, at *7-8; Franklin, 534 F. Supp. 3d at 345-47. In Franklin, Judge Bibas, sitting with the district court by designation, cast footnote 12 as mere *dictum* that does not, in and of itself, exculpate from liability under Section 227(b)(1)(A)(iii) robocallers who sought to collect government-related debts between 2015 and AAPC. See Franklin, 534 F. Supp. 3d at 347 (citing AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion)); see also Morales, 2022 WL 610766, at *4 n.63 (collecting cases observing similarly). Judge Bibas also concluded Section 227(b)(1)(A)(iii) does not create a content-based disparity because it subjects all robocallers to the same degree of civil liability for conduct within the retrospective time frame.[5] See Franklin, 534 F. Supp. 3d at 346-47, 349.

---

[5] Judge Bibas ultimately concludes punitive damages are unavailable against defendants who sought to collect government-related debt between 2015 and July 6, 2020, because of due process issues. See Franklin, 534 F. Supp. 3d at 349.

We find the reasoning laid out by the Sixth Circuit, Judge Bibas, and other courts rejecting defendants' arguments to be persuasive.[6]  We conclude Section 227(b)(1)(A)(iii) was enforceable throughout the period relevant to the matter *sub judice* and creates no conflict with the First Amendment.  We will deny defendants' motion to dismiss claims and to strike class allegations related to calls initiated prior to July 6, 2020.

### b.    <u>Sufficiency</u>

We now turn to the sufficiency of the remaining plaintiffs' claims.  Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number belonging to the plaintiff, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent.  <u>See, e.g.</u>, <u>Smith v. Direct Bldg. Supplies, LLC</u>, No. 20-3583, 2021 WL 4623275, at *2 (E.D. Pa. Oct. 7, 2021) (citation omitted); <u>Smith v. Vision Solar LLC</u>, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (same); <u>Aaronson v. CHW Grp., Inc.</u>, No. 1:18-CV-1533, 2019 WL 8953349, at *1 (E.D. Va. Apr. 15, 2019).  The first element—which is the only element defendants dispute, (<u>see</u> Doc. 39 at 18-37)—requires a plaintiff to plead facts supporting "the defendant actually, physically initiated the telephone call at

---

[6] Even if footnote 12 were binding precedent, the plurality disclaims the very position defendants ask us to adopt.  The plurality explicitly insists "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."  <u>See</u> <u>AAPC</u>, 140 S. Ct. at 2355 n.12 (plurality opinion).  The use of the past tense "covered" makes clear the plurality intends for past violators of Section 227(b)(1)(A)(iii) to remain liable.  It would be nonsensical to adopt the first sentence as binding but not the second.

issue," see Aaronson, 2019 WL 8953349, at *2 (citing Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018)); accord Direct Bldg. Supplies, 2021 WL 4623275, at *3.  What this usually requires in practice is pleading facts tracing the call to the defendant or their agent.  See Direct Bldg. Supplies, 2021 WL 4623275, at *3; Scruggs v. CHW Grp., Inc., No. 2:20-CV-48, 2020 WL 9348208, at *9 (E.D. Va. Nov. 12, 2020).

The gravamen of plaintiffs' pleadings is the alleged arrangement between Zeitlin, his companies, and an assortment of PACs to robocall thousands of people, solicit donations, and divide the proceeds.  (See, e.g., Doc. 33 ¶¶ 29-58).  We find this "scheme" sufficiently connects the calls identified by the remaining plaintiffs (Shoemaker and Gindin) to the defendants via a two-link chain of plausible inferences.

The first link is the connection between the PACs and the calls.  Shoemaker and Gindin claim the voices on their calls purported to solicit donations on behalf of two PACs—respectively, PODA and HALE.  (See Doc. 33 ¶¶ 114, 138).  The factual allegation that the callers identified themselves as calling on behalf of these PACs creates the plausible inference the calls were in fact made on their behalf.  PODA's FEC filings document PODA receiving an "itemized individual contribution" from Shoemaker for $300 on April 26, 2018—the day of the alleged call to Shoemaker.  (See id. ¶¶ 114, 119; PODA 2018 FEC Report).  Had the caller been a prankster or fraudster merely pretending to represent PODA as defendants suggest, (see Doc. 39 at 29-31), Shoemaker's donation never would have made it to PODA.

The next link is the connection between the PACs and defendants.  Plaintiffs plead the existence of a dubious hand-in-glove relationship between the PACs in question and Zeitlin and his companies.  PODA reported to the FEC raising $624,367.22 in 2018, the year of the call to Shoemaker.  (See Doc. 33 ¶¶ 114, 125; see also PODA 2018 FEC Report).  PODA spent $496,484.02 the same year (an election year) on operating expenditures compared to $20,000 on identifiable political activities.  (See Doc. 39 ¶ 126; see also PODA 2018 FEC Report).  Of those operating expenses, PODA paid 88.6% to defendants.  (See Doc. 33 ¶¶ 125-132; see also PODA 2018 FEC Report).  The year of Gindin's call, HALE took in $5,647,945.22 and spent $4,844,861.94 with 83.8% of those outlays going to what are alleged to be Zeitlin-affiliated entities.  (See Doc. 33 ¶¶ 56, 81, 149-64; see also HALE 2021-22 FEC Report).  Few of HALE's payments to defendants and none of PODA's are coded as something plausibly related to telemarketing expenses, but plaintiffs allege the labels given to the payments "were coded in such a way to conceal the illegal telemarketing operation that was taking place."  (See HALE 2021-22 FEC Report; PODA 2018 FEC Report; Doc. 33 ¶¶ 134-136).

The extensive outlays to Zeitlin-affiliated companies—whose line of business is alleged to be telemarketing—gives rise to the plausible inference all or most of PODA's and HALE's fundraising activity is conducted by those entities.[7]  In other

---

[7] Defendants contend a large portion of HALE's disbursements were paid to entities not named as defendants. (See Doc. 39 at 28).  This may well be true.  But the entities receiving those disbursements are alleged to be controlled by Zeitlin, (see Doc. 33 ¶¶ 151-164), and we view them as potentially incorporated into plaintiffs' lawsuit as defendants through John Doe entities 1-10.

words, the facts pled are sufficient to support the notion that defendants, along with

other Zeitlin-affiliated entities, were PODA's and HALE's predominate fundraisers.

When this inference is combined with the inference the calls came from legitimate

representatives of PODA and HALE, we find plaintiffs plausibly plead traceability,

*i.e.*, one of the Zeitlin-affiliated entities, either directly or through one of their

agents, initiated the calls to Shoemaker and Gindin.[8]  The amended complaint only

names ATS, UDS, and CC as defendants, but all three received payments from

PODA and HALE raising a plausible claim each may have initiated the calls in

question.  Plaintiffs also plead facts supporting the conclusion these entities, along

with the others named in the complaint, are essentially shells used to obscure a

singular telemarketing enterprise orchestrated by Zeitlin.  (See Doc. 33 ¶¶ 51-57, 99-

106).  Zeitlin's role at the center of the alleged scheme, considering the broad range

of agency theories incorporated into the TCPA, gives rise to a plausible claim he too

may be liable as an initiator of the calls.[9]  With facts pled supporting traceability of

---

[8] Defendants admit the TCPA allows for direct and vicarious liability.  (See
Doc. 39 at 19, 23-24).  The consensus among federal courts is the TCPA incorporates
the full range of vicarious-liability theories grounded in federal common-law agency
principles.  See, e.g., Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068,
1072 (9th Cir. 2019) (citation omitted); Hodgin v. UTC Fire & Sec. Americas Corp.,
885 F.3d 243, 251-52 (4th Cir. 2018) (citation omitted).  However, our court of appeals
has expressed skepticism as to the availability of personal-participation liability
against corporate officers under the TCPA.  See City Select Auto Sales Inc. v. David
Randall Assocs., Inc., 885 F.3d 154, 159-60 (3d Cir. 2018).

[9] Defendants deny plaintiffs' allegation that Zeitlin owns or controls the entity
defendants, (see Doc. 39 at 43-44), but we must take their allegation to be true for
purposes of this motion.

the calls to defendants we will deny defendants' motion to dismiss Shoemaker's and Gindin's TCPA claims.

> ### 2. *Unjust Enrichment*

Defendants argue plaintiffs' unjust enrichment claims must fail because plaintiffs do not plead facts supporting defendants received a benefit from their alleged TCPA violations.  (See Doc. 39 at 46-47).  Plaintiffs offer neither argument nor legal authority in answer to defendants' challenge to their unjust enrichment claim.  We deem plaintiffs' failure to respond to this dispositive legal argument an abandonment of their claims.  See Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (Conner, J.) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (Conner, J.) (same); see also Levy-Tatum v. Navient Sols., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases).  We will dismiss plaintiffs' unjust enrichment claims without prejudice.

## IV. Conclusion

We will grant in part and deny in part defendants' motion to dismiss.  We will also deny their motion to strike.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 5, 2023